SUPCO AUTOMOTIVE PARTS, INC.

v.

TRIANGLE AUTO SPRING CO., Swartz Products, Inc., Cambria Spring Co., Iron City Spring Co., Service Spring Co. and Champ Spring Co.

Civ. A. No. 82–0206.

United States District Court,
E. D. Pennsylvania.

May 18, 1982.

Warren Rubin, Bernard M. Gross, H. Mark Solomon, Philadelphia, Pa., Robert S. Atkins, Chicago, Ill., for plaintiff.

Barry F. Schwartz, Philadelphia, Pa., for all defendants except Swartz Products, Inc.

Edward Mullinix, Philadelphia, Pa., for Swartz Products, Inc.

## MEMORANDUM

BECHTLE, District Judge.

Presently before the Court is a motion for transfer of the above-captioned civil antitrust class action to the United States District Court for the Northern District of Illinois, where there is now pending a virtually identical civil action. For the reasons set forth below, the motion will be granted.

We turn first to the background of the first-filed suit, the action in the Northern District of Illinois (the "Illinois action"). That suit, also a civil antitrust suit, was filed on April 2, 1981—over nine months before the institution of the instant action—by plaintiff Service Spring, Inc. ("Service Spring"), an Illinois corporation with its principal place of business in Northlake, Illinois. *See* Defendants' Motion to Transfer this Action, Exhibit A [hereinafter cited as "Transfer Motion"]. The eight defendants named in the com-

plaint[1] were alleged to be "corporations engaged in the business of manufacturing and selling auto springs and main leaves in the United States," with the exception of defendant Spring Research Institute, which was alleged to be a related trade organization. *Id.* ¶¶ 4, 5. "Auto springs" were specifically defined to mean "springs, main leaves, helper springs, trailer springs, tempered steel or repair plates and wrapper leaves, used as replacements for original parts for autos, truck, trailers and buses." *Id.* ¶ 7. Plaintiff Service Spring claimed that, beginning at least as early as 1970, and continuing at least until the time of the filing of the complaint, defendants engaged in a continuing combination and conspiracy in unreasonable restraint of trade, "the substantial terms of which were to fix, raise, maintain and stabilize the prices of auto springs." *Id.* ¶ 12. Seven specific acts or types of acts were set forth as conduct engaged in by the defendants. *See id.* ¶ 13. Service Spring further alleged that, as a result of defendants' illegal conduct, plaintiff had been injured in its business and property. Accordingly, plaintiff sought declaratory and injunctive relief, together with treble damages, costs and attorneys' fees.

Less than two weeks later, Service Spring filed an amended complaint, restating the claims made in the original complaint as a class action brought on behalf of a nationwide class of persons or corporations that purchased replacement auto springs from any defendant or affiliate at any time during the period covered by the complaint. *Id.*, Exhibit B, ¶ 8. At last report, a motion to certify the class had not been filed. The action was dismissed as against two of the defendants named in the Illinois action, Stanley Spring Company and Spring Research Institute, leaving only six defendants. *See id.*, Exhibits D, E.

The civil action in this district (the "Pennsylvania action") was filed on January 15, 1982 by plaintiff Supco Automotive Parts, Inc. ("Supco"), a corporation with its principal place of business in Philadelphia, Pennsylvania. Like plaintiff Service Spring in the Illinois action, Supco files on behalf of a nationwide class of "all business entities or persons who purchased replacement auto springs from defendants from at least 1970 to the present date." Complaint ¶ 8(a). The six defendants named in the amended complaint are the same six defendants that remain in the Illinois action.[2] As in the Illinois action, the defendants are alleged to be corporations "engaged in the manufacture and sale of springs and main leaves in the United States." *Id.* ¶ 6. "Auto springs" is again specifically defined, and the definition is identical to that included in the Illinois action's complaint. *See id.* ¶ 9. The illegal conduct alleged is also identical to that set forth in the Illinois action: a conspiracy to fix, raise, maintain and stabilize the prices of auto springs. *Id.* ¶ 14. The seven specific classes of illegal acts allegedly committed in furtherance of the conspiracy are the same seven classes stated in the complaint in the Illinois action. *Id.* ¶ 15. Because of the resulting injury to the business and property of plaintiff and its fellow class members, plaintiff Supco, like Illinois plaintiff Service Spring, seeks de-

1. The eight defendants named in the Illinois action are as follows:

| Defendant | Principal Place of Business |
| --- | --- |
| Cambria Spring Company | Los Angeles, California |
| Champ Spring Co. | St. Louis, Missouri |
| Iron City Spring Co. | Pittsburgh, Pennsylvania |
| Service Spring Co. | Indianapolis, Indiana |
| Spring Research Institute | Highland, Michigan |
| Stanley Spring Co. | Harrisburg, Pennsylvania |
| Swartz Products, Inc. | Chicago, Illinois |
| Triangle Auto Spring Co. | DuBois, Pennsylvania |

2. The six defendants named in the amended complaint in the Pennsylvania action are as follows:

| Defendant | Principal Place of Business |
| --- | --- |
| Cambria Spring Company | Los Angeles, California |
| Champ Spring Co. | St. Louis, Missouri |
| Iron City Spring Co. | Pittsburgh, Pennsylvania |
| Garlock, Inc. (Service Spring Co. Div.) | Indianapolis, Indiana |
| Swartz Products, Inc. | Chicago, Illinois |
| Marmon Group, Inc. (Triangle Auto Spring Div.) | DuBois, Pennsylvania |

The amended complaint was filed on January 26, 1982, eleven days after the original complaint was filed. The only apparent amendment of any substance is a change in the names of the defendants, apparently to have the

claratory and injunctive relief, together with treble damages, costs and attorneys' fees, on behalf of itself and the class.

Since the filing of defendants' Transfer Motion, plaintiff in the Philadelphia action has moved to file a second amended complaint naming five new defendants, two corporations and three individuals. All of the proposed new defendants have principal places of business or reside in Pennsylvania, albeit in the Middle rather than the Eastern District. The Court has declined to rule on the motion to amend until it has decided the motion to transfer.

Although plaintiff Supco has its principal place of business in this district, none of the presently-named defendants has its principal place of business here. One of the six defendants has its principal place of business in Chicago, Illinois, the proposed transferee forum; and another, having a facility in the Western District of Pennsylvania, is a division of a corporation also having its principal place of business in Chicago. *See* Transfer Motion, Exhibits F, J. Two other defendants have their principal places of business in midwestern states much closer to the proposed transferee forum than to this district, and a fifth defendant has its principal place of business in Los Angeles, California. *Id.*, Exhibits G, I, K. Only one of the present six defendants, Iron City Spring Company ("Iron City"), having its principal place of business in Pittsburgh, Pennsylvania, is clearly closer geographically to the present forum, but even Iron City is located in a different federal judicial district. *See id.*, Exhibit H. While this balance would change if plaintiff Supco's second amended complaint were allowed, since all of the proposed defendants are individuals residing or corporations with principal places of business in Pennsylvania, it is notable that the places of residence or business of *all* of these proposed defendants lie, not within this district, but within the Middle District of Pennsylvania.

Furthermore, in the year that has elapsed since the Illinois action was filed, substantial progress has been made in pre-trial

proceedings. In discovery, defendants have answered interrogatories served by plaintiff in the Illinois action, and have produced, according to the affidavits attached to the Transfer Motion, a total of in excess of 47,000 pages of documents. Several depositions have been taken, and others are either imminent or scheduled.

Finally, the affidavits accompanying the Transfer Motion also demonstrate that each of the present six defendants in the Pennsylvania action has been the subject of a grand jury antitrust investigation also conducted in the Northern District of Illinois. Thousands of documents, including many—if not all—of the documents to be sought in the civil antitrust action, have been produced for that investigation, and are accordingly located in Chicago.

Defendants argue that the identity of the actions in the two forums should move the Court to transfer the later-filed Pennsylvania action to Illinois, where it can be consolidated with the Illinois action. In further support of their position, defendants contend that trial in Chicago, Illinois would be geographically more convenient for parties and witnesses, and also maintain that the progress already made in discovery and related pre-trial matters likewise militates in favor of transfer. In response, plaintiff argues that Pennsylvania possesses the true geographical advantage—at least if plaintiff's proposed amended complaint is considered. Plaintiff further suggests that the progress made in discovery is negligible, and that, in any event, any duplication of effort involved in permitting both actions to proceed could be alleviated by coordination among all counsel in the two cities. In support of this last point, plaintiff Supco notes that numbered among its counsel of record in the Pennsylvania action is plaintiff's counsel of record in the Illinois action.

With that background, the Court now turns to its analysis.

■ We begin with the statute. Section 1404(a) of Title 28, United States Code, provides that, "[f]or the convenience of par-

names properly reflect the true divisional or subsidiary status of the corporate defendants.

ties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, a district court must first decide whether the transferee forum proposed is one where the action "might have been brought." *See Van Dusen v. Barrack*, 376 U.S. 612, 616–617, 84 S.Ct. 805, 809–810, 11 L.Ed.2d 945 (1964); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). If so, the district court must then consider whether transfer would serve the convenience of the parties and witnesses and the interest of justice.

In the case before the Court, no party has argued or suggested that plaintiff Supco could not have brought this action in Illinois. Moreover, plaintiff Supco's amended complaint states that venue in this district is founded upon 28 U.S.C. § 1391(b), which permits an action to be brought "in the judicial district where all defendants reside." Under 28 U.S.C. § 1391(c), a corporation's residence for venue purposes may be the district in which it is either incorporated or licensed to do business or doing business. Since defendants have demonstrated by affidavits that all defendants presently party to the Pennsylvania action are at least doing business in the Northern District of Illinois, that district is one in which the present action "might have been brought." *See* Transfer Motion, Exhibits F to K.

■■■■ In determining next whether the convenience of parties and witnesses and the interest of justice warrant transfer, the district court is vested with wide discretion to weigh all relevant factors. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). The factors to be considered are generally the same factors considered by a court deciding a motion for dismissal under the doctrine of *forum non conveniens*, but the discretion exercised is broader where a mere change of venue is contemplated. *Piper Aircraft Co. v. Reyno*, —— U.S. ——, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1947). Thus, the factors to be considered include matters of both the private interests of the parties and the public interest, and may be summarized as follows:

1. Plaintiff's choice of forum;
2. Relative ease of access to sources of proof;
3. Availability of compulsory process for attendance of unwilling witnesses;
4. Cost of obtaining attendance of willing witnesses;
5. Possibility of a view of premises, if appropriate;
6. All other practical considerations making trial easy, expeditious and inexpensive;
7. Enforceability of a judgment if obtained;
8. Relative congestion of court dockets;
9. Relationship to the litigation of the community from which jurors will be drawn; and
10. Familiarity of the forum with the state law governing a diversity case.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

Two of the foregoing considerations—the possibility of a view of the premises and the forum's familiarity with governing state law—are patently inapplicable in a civil antitrust conspiracy case like the one before us. Others listed might have been relevant but have not been argued or made the subject of a factual showing in support sufficient to allow the Court to consider those factors in its determination. Thus, the Court has not considered the availability of compulsory process, the enforceability of any judgment obtained, or the relative congestion of the dockets in the Northern District of Illinois and the Eastern District of Pennsylvania. Given the overwhelming force of the considerations favoring transfer, however, as set forth below, the Court cannot conceive of any more specific showing on the aforementioned points that would cause the Court to alter its decision.

Of the remaining factors to be considered, the first is the plaintiff's choice of forum. Plaintiff's choice of forum is a "paramount consideration" in any determination of a transfer request, and should not lightly be disturbed. *Shutte v. Armco Steel Corp., supra*, at 25. Nevertheless, where the moving party has satisfied its burden of showing that the balance of proper interests weighs strongly in its favor, then transfer is appropriate despite plaintiff's choice. *Id.* In addition, where, as here, the plaintiff seeks to represent a class of many potential plaintiffs scattered across the country, plaintiff's choice of forum deserves less weight. *Impervious Paint Industries, Ltd. v. Ashland Oil, Inc.*, 444 F.Supp. 465 (E.D. Pa.1978); *Blender v. Sibley*, 396 F.Supp. 300 (E.D.Pa.1975); *Polin v. Conductron Corp.*, 340 F.Supp. 602 (E.D.Pa.1972).

Dominating any consideration of the remaining four interests, both public and private, is the pendency of the Illinois action. It is well-settled in this district that the pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion for a change of venue. *Prudential Insurance Co. of America v. Rodano*, 493 F.Supp. 954, 955 (E.D.Pa.1980); *Impervious Paint Industries, Ltd. v. Ashland Oil, Inc., supra*, at 468; *American Medicorp, Inc. v. Humana, Inc.*, 445 F.Supp. 573, 585 (E.D.Pa.1977); *Blender v. Sibley, supra*, at 304–305; *Blanning v. Tisch*, 378 F.Supp. 1058, 1061 (E.D.Pa.1974). In *Blanning*, Judge Luongo of this district set forth the reasons underlying this policy by quoting Judge Weinfeld in *Schneider v. Sears*, 265 F.Supp. 257 (S.D.N.Y.1967). Judge Weinfeld stated:

> There is a strong policy favoring the litigation of related claims in the same tribunal in order that: (1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the

[same] time serving the public interest; (4) inconsistent results can be avoided. *Id.* at 266–267 (footnote omitted).

In applying these considerations to the facts of the case before us, we are also guided by Judge Newcomer's decision under similar circumstances in *Impervious Paint Industries, Ltd. v. Ashland Oil, Inc., supra.* That case involved a civil antitrust class action brought in this district against defendants who were already defendants in two related government antitrust actions, one civil and one criminal, in the Western District of Kentucky. By the time the motion to transfer was made and decided, substantial progress had already been made in discovery and many thousands of documents had been produced and stored in Kentucky. In addition, the Western District of Kentucky appeared to be more conveniently located for all parties other than the plaintiff, who—like plaintiff Supco here—was merely the representative of a nationwide class. In light of these and other factors, Judge Newcomer granted the motion to transfer.

Transfer in the present case is, if anything, more appropriate. The civil action pending in the proposed transferee district is not merely related but identical in all respects except the identity of the representative plaintiff. Indeed, in the present case there is a possibility of consolidation that was absent in *Impervious Paint* where the civil action in the transferee forum was filed by the government rather than a private plaintiff. The plaintiffs even share the same counsel, and he is based in the proposed district of transfer.

The geographical distribution of the parties also tilts, however slightly, in favor of transfer, regardless of whether plaintiff Supco is allowed to file its second amended complaint adding five new defendants. Four of the six present defendants are connected primarily with the midwest, and the fifth is from the west coast. This geographic distribution suggests that transfer to Illinois would be more convenient for both parties *and* witnesses, for in antitrust conspiracy cases the most important fact

witnesses are likely to be officers or employees of the corporate defendants. Adding the five defendants proposed in Supco's second amended complaint would not change this balance, since all of them would also have to travel here from another district for trial and related proceedings.

Of critical importance is the progress already made in the Illinois action. Discovery is well underway: interrogatories have been filed and answered by both sides, many thousands of documents have been produced, and the key depositions have either been taken or scheduled. Defendants have already expended considerable resources in the defense of the Illinois action, and would only have to duplicate those expenses if the Transfer Motion were denied and the present case remained in Pennsylvania. Moreover, Chicago is also the site of the pending parallel grand jury investigation, which has also required the production of thousands of documents and the expenditure of defendants' resources. Retaining the Pennsylvania action would thus involve yet another layer of duplication where the civil and grand jury proceedings overlap. Plaintiff's contention that duplication can be avoided by coordinated efforts of all counsel must be dismissed at this point as unsupported speculation. In any event, it is hardly conceivable that any efforts, however successful or well-intentioned, could reduce the costs of duplicitous litigation by more than a small fraction. Plaintiff's alternative argument that the absence of a class certification motion in the Illinois action demonstrates how little has been accomplished in that suit is also unpersuasive in view of the extensive discovery already completed.

Thus, it is clear that transfer will serve both the convenience of the parties and the interest of justice. It will reduce the cost of already burdensome litigation, permit easier access to documentary evidence, allow one judge to try and possibly consolidate both cases, avoid overlapping and competing class actions involving the same claims, and prevent inconsistent results on the merits. *See Hall v. Kittay,* 396 F.Supp. 261, 264 (D.Del.1975). Since defendants have thus satisfied all the requirements of 28 U.S.C. § 1404(a), their motion for transfer will be granted.