**READING METAL CRAFT COMPANY, INC.**

v.

**HOPF DRIVE ASSOCIATES and Wenal Valley Associates.**

Civ. A. No. 87–8436.

United States District Court, E.D. Pennsylvania.

July 27, 1988.

G. Thompson Bell, III, Reading, Pa., for plaintiff.

Howard S. Epstein, Edward R. Eidelman, Allentown, Pa., for defendants.

## MEMORANDUM AND ORDER

VAN ANTWERPEN, Judge.

This is a breach of contract action arising out of the construction of a shopping center known as "Spring Valley Marketplace" in Spring Valley, New York. This action was originally brought by the plaintiff in the Court of Common Pleas, Berks County, Pennsylvania, on November 23, 1987. Subsequently, the action was removed to the U.S. District Court for the Eastern District of Pennsylvania upon petition of the defendants,[1] pursuant to 28 U.S.C.A. § 1332(a) (West Supp.1988).

The plaintiff, Reading Metal Craft Company, Inc, is a Pennsylvania corporation with its principal place of business in Reading, Pennsylvania. Although described in the plaintiff's complaint as a "partnership", the defendant, Hopf Drive Associates, describes itself, in the Answer, as a New York joint venture with an office in Spring Valley, New York. Wenal Valley Associates, now known as Valley Associates, Ltd., is one of two joint venture partners in Hopf Drive Associates. Wenal Valley Associates is a Florida limited partnership with its office in Fort Lauderdale, Florida. The identity of the other joint venture partner has not been disclosed. This matter comes before the court on the motion of the defendants to have this action transferred to the Southern District of New York

---

1. "Wenal Valley Associates" is named as an individual defendant; it is actually one of two joint venturers making up Hopf Drive Associates, the joint venture which undertook the construction of the shopping center. The two signatories of the subcontract with the plaintiff were the plaintiff, "Reading Metal Craft" and "Hopf Drive Associates". "Wenal Valley Associates, Ltd., Part- ner" and "Wenal Valley, Inc., General Partner" are listed directly below "Hopf Drive Associates." "Harold S. Wenal, President"—presumably of Wenal Valley, Inc.—is the individual who signed on behalf of Hopf Drive Associates. The identity of the other joint venturer has not been disclosed.

pursuant to 28 U.S.C.A. § 1404(a) (West 1976). The parties have offered oral argument on the issue of transfer before this court on June 9, 1988.

■ Section 1404(a) reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In commencing our analysis of this section, we must first consider whether this action "might have been brought" in the Southern District of New York. To answer that question, we must decide the issues of proper venue and personal jurisdiction in the proposed transferee district. *Cooper v. Valley Line Co.*, 320 F.Supp. 483 (W.D.Pa.1970).

■ With regard to venue, 28 U.S.C.A. § 1391(a) (West 1976) provides: "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." In the instant case, the plaintiff resides in the Eastern District of Pennsylvania. If venue is to be laid in the Southern District of New York, then either the defendants must reside there or the claim must have arisen there. We believe that the defendants in the instant case reside, for the purposes of venue, in the Southern District of New York.

The defendant, Hopf Drive Associates, is a joint venture. In the answer to the complaint, it is described as a "New York joint venture with an office located at 49 Airport Executive Bypass Road, Spring Valley, Rockland County, New York." In the Motion for Change of Venue, it is described as "a New York joint venture with its principal place of business in New York." This joint venture was comprised of two joint venture partners: an unidentified joint venturer and Wenal Valley Associates, now known as Valley Associates, Limited, a Florida limited partnership.

A joint venture is a particular form of business relationship:

"Assuming that the circumstances do not establish a partnership, the relation [i.e., the joint venture] is generally created when two or more persons agree to combine their money, property, or time in the conduct of some particular line of trade, or for some particular business deal, agreeing to share jointly, or in proportion to the capital contributed, in the profits and losses."

16 N.Y.JUR.2d *Business Relationships* § 1581 (1981).

The nature of a joint venture has further been described thus:

"A joint venture has been likened to a limited partnership—not limited in a statutory sense as to liability, but as to scope and duration. Thus, one distinction between a joint venture and a partnership is that the former relates to a single transaction (though it may be continued over several years), while the latter relates to a general business of a particular kind. Joint ventures are also distinguishable from partnerships in that the authority of one joint venturer to act as the agent of the others is more limited than the agency of a member of a partnership."

*Id.* § 1578 (footnote omitted).

New York case law has specifically said that "[j]oint venturers are subject to the same rules as a technical partnership. Generally speaking, the principles of law of partnership apply to a joint venture, at least by analogy (*Napoli v. Domnitch*, 34 Misc.2d 237, 226 N.Y.S.2d 908, modified on other grounds, 18 A.D.2d 707, 236 N.Y.S.2d 549). . . ." *John's, Inc. v. Island Garden Center of Nassau, Inc.*, 269 N.Y.S.2d 231, 236, 49 Misc.2d 1086 (1966), *aff'd per curiam, C.J. Zonneveld & Sons, Inc. v. Island Garden Center, Inc.*, 280 N.Y.S.2d 34, 53 Misc.2d 1021 (1967).

The conceptualization of a joint venture as a kind of limited partnership is useful in determining the issue of proper venue [2] for

---

**2.** Since transfer under 28 U.S.C.A. § 1404(a) can only be made to a district or division where the action "might have been brought", we must consider how a New York Federal Court would view venue and jurisdiction. It is for this reason that the law of New York has been used.

a joint venture within the limitations of 28 U.S.C.A. § 1391(a). *FSI Group v. First Federal Savings and Loan Association,* 502 F.Supp. 356 (S.D.N.Y.1980) would allow venue for a limited partnership to be placed in the district where it has its principal place of business:

> "Defendant's claim that venue is improper under 28 U.S.C. § 1391 because the residence of each of the limited and general partners is not the Southern District of New York, must also be denied. While there is opposing thought on the issue, many courts have held that, for purposes of determining venue, the 'residence' of a limited partnership, such as FSI, is the partnership's principal place of business—in this case, the Southern District of New York."

*Id.* at 357.

The court explained its decision in these terms:

> "In effect, the partnership is regarded as a jural entity, distinct from its individual partners. *Joscar Co. v. Consolidated Sun Ray, Inc.,* 212 F.Supp. 634 (S.D.N.Y. 1963). The domicile or residence of the individuals who make up the partnership is irrelevant for venue purposes because of the partnership's business nature, similar to that of a corporation. As stated by the Supreme Court in *Denver & R. G. W. R. Co. v. Railroad Trainmen,* 387 U.S. 556, 560, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967), the modern reality of a multi-state association permits the determination of proper venue by looking to the residence of the association rather than that of its individual members. *See also Penrod Drilling Co. v. Johnson,* 414 F.2d 1217 (5th Cir.1969); *United Mine Workers of America v. Coronado Coal Co.,* 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922). For these reasons, the court finds that the plaintiff limited partnership has a separate residence from its members for venue purposes. Therefore, venue is proper in the Southern District of New York."

*Id.*

In the instant case, the objective of the joint venture known as Hopf Drive Associates was the construction of a shopping center in New York. To effectuate that purpose, the joint venture placed its principal place of business in Rockland County, New York. It would appear reasonable, then, to regard the joint venture as a jural entity distinct from its individual joint venture partners and to place venue in the Southern District of New York.

■ The next issue to be addressed is that of personal jurisdiction. Jurisdiction over a partnership does not focus on its principal place of business; it is concerned with the residences of its component partners. *Rait v. Jacobs Brothers,* 268 N.Y. S.2d 750, 49 Misc.2d 903 (1966). We do not know the "residence" of one of the joint venture partners; Wenal Valley Associates is, however, described as a Florida limited partnership. We must now look to the law of New York which pertains to jurisdiction over non-domiciliaries, since neither joint venture partner appears to be a domiciliary of New York, and to the law of New York which pertains to service of process.

■ N.Y.CIV.PRAC.LAW § 302 (McKinney 1972 & Supp.1988) reads in pertinent part:

> "(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:
>
> . . . . .
>
> (4) owns, uses or possesses any real property situated within the state.
> "
> . . .

In the instant case, the cause of action —a breach of contract suit—arises out of the construction of a shopping center in New York. According to the subcontract between the plaintiff and the joint venture, this project was "owned" by the joint venture. Thus, under § 302(a)(4), personal jurisdiction would exist in New York.

■ "Service upon a joint venture may be made by personally serving process upon any one of the joint venturers (see CPLR 310; *John's, Inc. v. Island Garden*

*Center of Nassau,* 49 Misc.2d 1086, 269 N.Y.S.2d 231).... " *Sullivan Realty Organization, Inc. v. Syart Trading Corp.,* 68 A.D.2d 756, 417 N.Y.S.2d 976, 978 (1979). Although N.Y.CIV.PRAC.LAW § 310 (McKinney 1972) states that "[p]ersonal service upon persons conducting a business as a partnership may be made by personally serving the summons within the state upon any one of them", this section must be read in conjunction with N.Y.CIV. PRAC.LAW § 313 (McKinney 1972), which states:

> "A person ... subject to the jurisdiction of the courts of the state under section ... 302 ... may be served with the summons without the state, in the same manner as service is made within the state, by any person authorized to make service within the state who is a resident of the state or by any person authorized to make service by the laws of the state ... in which service is made.... "

Thus, New York would permit service upon the joint venture, whether its component joint venturers were found within or without the State of New York. *See also Chazen v. Dutchess Properties,* 434 N.Y. S.2d 93, 107 Misc.2d 254 (1980) (personal service upon a partner outside the state is sufficient to acquire jurisdiction over the partnership which possesses real property situated within the state).

█ The next step in our inquiry regarding the propriety of transfer under 28 U.S. C.A. § 1404(a) is to determine whether transfer would work towards "the convenience of parties and witnesses" and "the interest of justice." A list of factors to be considered in deciding this issue has been culled from *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) and summarized in *Supco Automotive Parts v. Triangle Auto Spring Co.,* 538 F.Supp. 1187 (E.D.Pa. 1982). These factors are:

"1. Plaintiff's choice of forum;

2. Relative ease of access to sources of proof;

3. Availability of compulsory process for attendance of unwilling witnesses;

4. Cost of obtaining attendance of willing witnesses;

5. Possibility of a view of premises, if appropriate;

6. All other practical considerations making trial easy, expeditious and inexpensive;

7. Enforceability of a judgment if obtained;

8. Relative congestion of court dockets;

9. Relationship to the litigation of the community from which jurors will be drawn; and

10. Familiarity of the forum with the state law governing a diversity case."

We are mindful of the importance of the first *Supco* factor, the plaintiff's choice of forum. It is said to be entitled to " 'paramount consideration'." *Lieb v. American Pacific International, Inc.,* 489 F.Supp. 690, 697 (E.D.Pa.1980) (quoting *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970, *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971)). It is the moving party who "bears the burden of showing that a balancing of the interests weighs in favor of the transfer. Unless that balance weighs strongly in favor of the defendant, the plaintiffs' choice of forum should not be disturbed. *Ibid....*" *Lieb,* 489 F.Supp. at 697. We have weighed the interests in favor of transfer and we have concluded that, on the basis of many of the factors listed in *Supco,* the instant case should be transferred to the Southern District of New York.

With regard to "relative ease of access to sources of proof", and "the cost of obtaining attendance of willing witnesses", the balance of interests is fairly even. The defendants have submitted the affidavit of Jorge Cotto, a project engineer, in which Mr. Cotto lists twenty-eight documents and tangible items which the defendants expect to produce in support of their defenses and counterclaim against the plaintiff. All of these documents and items are located in New York. The plaintiff has submitted an affidavit of Howard L. Feist, its President and Treasurer. Mr. Feist states that the plaintiff intends to introduce at trial the following documents: applications for pay-

ment pursuant to its subcontract agreement; records of account showing payments made by Hopf Drive and Wenal Valley; manufacturing, production and transportation records of work performed by the plaintiff; correspondence between the parties; and documents showing procurement of material in connection with the shopping center project. Virtually all of these documents are said to be located in Reading, Pennsylvania. All of the witnesses which the plaintiff intends to call at trial are its past and present employees, and all of them are, likewise, located in Reading, Pennsylvania.

No matter where this action is heard, one or the other party will be inconvenienced. If this action is heard in the Eastern District of Pennsylvania, the defendants must transport documents and witnesses from New York. If the action is transferred to the Southern District of New York, it is the plaintiff who must produce its documents and witnesses there. Fortunately, the requested transferee district is not that far from the district where this action was originally brought. We are not faced, for example, with a motion to transfer to the Central District of California. Nonetheless, one party or the other must bear some inconvenience no matter where the trial of this action is held.

Neither party has argued or offered any evidence that it must have access to compulsory process for the attendance of unwilling witnesses. We, therefore, cannot gauge with any certainty the weight of this factor in evaluating the "convenience of the parties" and the "interest of justice".

Some of the other *Supco* factors are easier to resolve. With regard to "relative congestion of court dockets", the docket of the Southern District of New York does not appear to be significantly more congested than that of the Eastern District of Pennsylvania.[3] The convenience of the parties and the interest of justice would be just as much served, as far as this factor is concerned, in the Southern District of New York as in the Eastern District of Pennsylvania. If a "view of the premises" should

prove necessary at some point in the trial, the shopping center, which occasioned the dispute, is located in Rockland County in the Southern District of New York. Should the plaintiff succeed in this breach of contract action, it would also appear easier to enforce a judgment through a New York court against a joint venture with its principal place of business in New York rather than having to go through the process of having a Pennsylvania judgment against the joint venture transferred to or recognized by the courts of New York.

The "relationship to the litigation of the community from which jurors will be drawn" would also tend to favor the choice of forum in the Southern District of New York. This is a breach of contract action involving a Pennsylvania corporation and a New York joint venture whose objective was the construction of a shopping center in the Southern District of New York. Although the nature of this action sounds in breach of contract, the *raison d'être* of that contract was a New York construction project. The relationship of the Southern District of New York and its jurors to this litigation, therefore, seems stronger than the relationship of the Eastern District of Pennsylvania and its jurors.

■ The "familiarity of the forum with the state law governing a diversity case" is a factor that presents the issue of which law—Pennsylvania's or New York's—applies? Under *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a federal court must apply the conflict of laws rules prevailing in the state in which it sits. We, therefore, must turn to Pennsylvania's conflict of laws rules for contract cases in order to decide which state's law applies in the instant case.

As the Third Circuit has explained, Pennsylvania's "flexible conflicts methodology" applies to contract actions as well as tort actions:

"In *Melville v. American Home Insurance Co.*, 584 F.2d 1306, 1311–1313 (3d Cir.1978), this court determined that the

---

**3.** Annual Report, Director of Administrative Office of U.S. Courts.

'flexible conflicts methodology' combining interest analysis and Restatement Second of Conflicts of Laws contacts theory employed by the Pennsylvania Supreme Court in the tort case of *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), is to be extended to contracts actions. Thus, under Pennsylvania choice-of-law principles, the place having the most interest in the problem and which is the most intimately concerned with the outcome is the forum whose law should be applied. *Griffith*, 416 Pa. at 22, 203 A.2d at 805–806."

*Complaint of Bankers Trust Co.*, 752 F.2d 874, 881–82 (3d Cir.1984).

Therefore, we must now decide which state has the most "contacts" and which state is most intimately concerned with the outcome.

■ In an action for breach of contract, the governing choice of law rule in Pennsylvania dictates that the following "contacts" be considered in determining the proper choice of law: the places of negotiation, contracting, and performance, the location of the subject matter of the contract, and the citizenship of the parties. *Day & Zimmerman, Inc. v. Exportadora Salcedo de Elaboradoras de Cacao S.A.*, 549 F.Supp. 383 (E.D.Pa.1982).

The parties dispute the place of negotiation and contracting. The plaintiff maintains that the joint venture and its agents contacted the plaintiff in Pennsylvania and solicited a bid on the project. The defendants, while admitting that telephone conversations occurred *after* negotiations and prior to execution of the actual contract, maintain that all face-to-face negotiations took place at the office of the construction manager, Fred L. Holt, Inc., in New York. The defendants admit to only *one* visit by a representative to the plaintiff's plant and the purpose of that visit was to verify the progress of work only after the plaintiff was in default of its performance deadlines. The subcontract agreement itself is dated "4th day of May, 1987", but the date beside the plaintiff's signature is "6/5/87". The plaintiff maintains that it executed the agreement in Reading, Pennsylvania. The

plaintiff further maintains that the payments under the agreement were to be sent to its facility in Pennsylvania. The defendants deny this and the agreement itself is silent as to where payments were to be made.

We are unable to determine with any certainty where the contract was actually negotiated. It is probable, however, that the contract was finally executed by the plaintiff in Pennsylvania on June 5, 1987. Although, then, Pennsylvania might be said to be the place of execution of the contract, our inquiry does not stop there. We must next consider the place of performance. This was a contract to fabricate, furnish and erect certain structural and miscellaneous steel for a shopping center in New York. The procurement and fabrication of the steel took place in plaintiff's plant in Pennsylvania; the erection of the steel, however, took place in New York. We might thus conclude that performance took place in *both* states.

The location of the subject matter is the least onerous of determinations that we must make. The shopping center is located in Rockland County, New York. The "citizenship" of the parties is also equally ascertainable: the plaintiff is a Pennsylvania corporation and the defendants comprise a "New York joint venture", one of whose joint venturers is a Florida limited partnership and the other an undisclosed individual or entity with an undisclosed domicile.

■ Evaluating the "contacts" discussed above, we believe that the scale tips more in favor of New York than Pennsylvania. Some negotiations did take place in New York; one of the parties operates as a joint venture, with its principal place of business in New York; a very important part of the contract (*i.e.*, erection of steel structures) was performed in New York; and the subject matter of the contract—the Spring Valley Shopping Center—is located in New York. We also believe that New York would have a greater interest than Pennsylvania in having its law applied. We are not unmindful that Pennsylvania would also have an interest in the application of its own law, since the plaintiff is a

Pennsylvania corporation making steel in Pennsylvania and employing Pennsylvania residents. But New York is the state where the plaintiff was to provide and install the steel made in Pennsylvania; its delays in doing so created problems in the construction of a large commercial venture designed to provide goods and services to a large population living in New York. We, therefore, believe, given the number of significant contacts with New York and the greater importance that New York would have in seeing its law applied, that the law of New York should be applied in this breach of contract action. "Familiarity of the forum with the state law governing a diversity case", *Supco*, 538 F.Supp. at 1191, is an important factor to be considered in deciding a motion to transfer. A Federal Court sitting in New York would undoubtedly be more familiar with the substantive law of New York regarding contracts.[4]

Finally, yet another of the *Supco* factors convinces us that venue should properly be placed in the Southern District of New York: "all other practical considerations making trial easy, expeditious and inexpensive." Under this expansive category, we shall discuss the pending mechanic's lien litigation over this construction project which currently exists in New York federal and state courts.

On December 14, 1987, the plaintiff filed a mechanic's lien against Hopf Drive Associates in the office of the Clerk of Rockland County, New York. Pursuant to N.Y. LIEN LAW § 591 (McKinney 1966), the plaintiff had been directed by the defendants to commence an action to enforce this lien. At oral argument on this motion to transfer, held on June 9, 1988, counsel for the plaintiff stated that the plaintiff had decided not to proceed with an action to enforce its lien. The same is not true, however, with two other mechanic's lienholders, as will be discussed more fully below.

Five of the plaintiff's subcontractors have also filed mechanic's liens against the shopping center, because the plaintiff has failed to pay them. These subcontractors are: Olori Crane Service, Inc.; Tubular Steel–Eastern Service Center; Erectors and Riggers, Inc; Vulcraft Division Nucor Corporation; and Richter Crane Service, Inc. The joint venture, pursuant to New

---

**4.** We have conducted the choice of law analysis discussed above because we do not agree with the defendant that a choice of New York law has been included in the subcontract between the plaintiff and the joint venture. In a diversity action, a district court sitting in Pennsylvania will follow a contractual choice of law provision. *American Air Filter Co., Inc. v. McNichol*, 527 F.2d 1297 (3d Cir.1975). In the instant case, however, we have found none in the subcontract between the parties. The defendants point to a reference, in the subcontract agreement, to the agreement between the "Owner" (Hopf Drive Associates) and Fred L. Holt, Inc., the construction manager. The subcontract agreement states: "The Subcontractor agrees to furnish all material and perform all work as described in Article II Hereof: (1) at a project known as Spring Valley Marketplace, a Shopping Center (2) located at Hopf Drive & Rte 59, Spring Valley, New York (3) which project is owned by Hopf Drive Associates in accordance with this agreement, the agreement between the Owner and FRED L. HOLT, INC. (the Construction Manager) and in accordance with the general conditions of the contract, supplementary general conditions, the drawings and specifications, and the contract documents listed in the addenda to this agreement prepared by hereinafter called the Architect, all of which doc-

uments, signed by the parties thereto or identified by the Architect or Owner's authorized agent, form a part of a contract between Holt and the Owner, specimens of which shall be available to the subcontractor upon his request prior to and at any time subsequent to signing this subcontract." Article X of this agreement also states that the subcontractor shall be "bound to the Owner by the contract documents and this agreement...." The agreement between Hopf Drive Associates and Fred L. Holt, Inc. states: "This Agreement shall be governed by the law of the place where the Project is located." This is New York. We do not believe that the reference in the subcontract to the agreement between the joint venture and the construction manager creates a choice of New York law for the subcontract between the plaintiff and the joint venture in the instant case. The subcontractor-plaintiff merely agrees to "furnish all material and perform all work" in accordance with the owner's agreement with the construction manager. Moreover, this agreement has not been even "incorporated by reference" into the plaintiff's subcontract with the joint venture. For all of these reasons, therefore, we believe that the defendants' argument regarding a contractual choice of law provision must fail.

York's Lien Law, has served notices upon these other lienholders (as well as upon the plaintiff) requiring them to commence actions to enforce their liens. Evidence that two of these lienholders have already done precisely that has been presented to the court. We are unsure, from the record presented, whether the other lienholders have, as yet, done likewise.

After the defendants had filed this motion for transfer, an action was commenced in the U.S. District Court for the Southern District of New York (the "Vulcraft action") entitled *Vulcraft, a division of Nucor Corporation v. Hopf Drive Associates, Reading Metal Craft Co., Inc., Tubular Steel–Eastern Service Center, Rieder Crane Service, Inc., trading as Rushton Crane Service, Olori Crane Service, Inc., and Erectors and Riggers, Inc.,* No. 88 CIV. 0895. Also, another action (the "Tubular action") was later begun in the New York Supreme Court of Rockland County, entitled *Tubular Steel Corp. v. Hopf Drive Associates and Reading Metal Craft Co.*

In *Vulcraft*, the complaint, in part, alleges that Vulcraft had entered into a subcontract with Reading to furnish steel joists for improvement of the property. Vulcraft claims that Reading has not paid it $118,-424.26 for these improvements. As the result of such alleged non-payment, Vulcraft filed a mechanic's lien against the shopping center and then commenced suit to foreclose the lien. The complaint in *Tubular* alleges, in part, that Tubular contracted with Reading to supply steel pipe and tubing for the property at the agreed price of $64,983.54, of which $22,896.34 was allegedly paid, and $42,087.20 allegedly remains unpaid. As the result of such alleged non-payment, Tubular filed a lien against the shopping center and commenced suit to foreclose the lien. In both actions, the plaintiff in the instant case was

named a defendant. At the oral argument, however, plaintiff's counsel stated that the plaintiff intended to let the case against it go to default in these two actions. According to its counsel at oral argument, although the plaintiff has not declared bankruptcy, the plaintiff is no longer actively in business.

The mechanic's liens have been filed by the plaintiff's subcontractors and two of those subcontractors have instituted foreclosure actions because of the plaintiff's failure to pay them for their work on the shopping center. If the remaining subcontractors wish to preserve their rights, they, too, will have to commence foreclosure actions in a New York court. The instant action, however, has been filed in the U.S. District Court for the Eastern District of Pennsylvania; it concerns a question vital to the outcome of the mechanic's lien litigation in New York: the obligation of the joint venture to pay the plaintiff the sums due under their contract when that contract was subsequently modified to provide the joint venture with set-offs for delays in performance by the plaintiff.[5] The resolution of this issue is highly important. Under N.Y.LIEN LAW § 4 (McKinney 1966), a subcontractor is barred from recovering from an owner sums in excess of the amount due from the owner to the contractor which engaged the subcontractor.

To date, New York courts have not addressed the issue of whether price reductions in sums due to a contractor will be deemed to be payment from an owner to a contractor so as to defeat the claims of the subcontractors. It is upon this issue of first impression in New York that the rights of the subcontractors will depend. The resolution of the dispute in the instant case is highly relevant to these cases already filed in New York. The joint venture

---

5. This modification was achieved through a letter agreement dated August 18, 1987. The joint venture's concern over problems arising from the plaintiff's completion of the project is further evidenced by the allegation in the defendants' counterclaim that the plaintiff executed a waiver of lien on September 16, 1987 by which it certified and represented that, upon payment to it by the joint venture of $394,454.80, there

would be no claims outstanding by any subcontractors or materialmen for work or services performed or rendered through the date of the certification arising out of or related to the labor and materials for which payment was made under the certification and agreed to indemnify and hold the joint venture harmless against such subcontractors' claims.

argues that the set-offs under the modified agreement excuse any further payment to the plaintiff. Indeed, the joint venture has brought a counterclaim for sums that it believes due from the plaintiff because of extra charges incurred in finishing the shopping center after the plaintiff's poor performance caused delays. Thus, the determination of the validity of the set-offs in the modified agreement between the plaintiff and the joint venture has significant bearing on the fund which the subcontractors may have available to them in their mechanic's lien foreclosure actions.

We believe that it would be in the interest of judicial economy if the instant case were transferred to the Southern District of New York where a related case is pending. Were consolidation of the instant case achieved with the two New York foreclosure actions (and possibly with any other mechanic's lien foreclosure actions that might have been filed), then judicial economy would indeed be served. One court, the U.S. District Court for the Southern District of New York, would then be able to decide: (1) the obligations between the parties in the instant case; (2) the impact, under New York law, of the set-offs claimed by the joint venture because of the delays of the instant plaintiff, on the fund available to satisfy the mechanic's liens; and (3) the amount—if any—to be awarded the plaintiffs in the mechanic's lien actions.

We believe that the words of the court in *Prudential Insurance Co. of America v. Rodano,* 493 F.Supp. 954 (E.D.Pa.1980) apply to the instant case as well as they did to the parties in *Rodano:*

"The most compelling reason for transfer is that it would best serve the interests of justice. The presence of two related cases in the transferee forum is a substantial reason to grant a change of venue. The interests of justice and the convenience of the parties and witnesses are ill-served when federal cases arising out of the same circumstances and dealing with the same issues are allowed to proceed separately. The substantial likelihood that this case will be consolidated with the two related cases pending in the United States District Court of Mary-land, sitting at Baltimore, weighs heavily in favor of transfer."

*Id.* at 955. *See also Supco,* 538 F.Supp. at 1192.

For all of the reasons adduced above, and especially for the reason of related cases pending in New York, we believe that the defendants have met the heavy burden imposed upon them in making their motion for transfer under 28 U.S.C.A. § 1404(a).