**KLAUDER AND NUNNO ENTERPRISES, INC.**

v.

**HEREFORD ASSOCIATES, INC.**

**KLAUDER AND NUNNO ENTERPRISES, INC. and Gerald J. Klauder**

v.

**HEREFORD ASSOCIATES, INC. and Bernard J. Murtaugh, Jr.**

Civ. A. Nos. 89–5654, 89–5129.

United States District Court, E.D. Pennsylvania.

Oct. 25, 1989.

Robert A. Korn, Korn, Kline & Kutner, Philadelphia, Pa., for plaintiffs.

David J. Cowhey, Hankin, Sandson & Sandman, Atlantic City, N.J., for defendants.

## MEMORANDUM

CAHN, District Judge.

Plaintiff Klauder and Nunno Enterprises, Inc. ("K & N") filed an action, No. 89–5654, against Hereford Associates, Inc. ("Hereford") on July 31, 1989, alleging breach of contract, fraud, and reckless conduct stemming from a failed construction contract of September 18, 1987. K & N and Gerald J. Klauder ("Klauder") sued Hereford and Bernard J. Murtaugh, Jr. ("Murtaugh") in No. 89–5129 (filed July 13, 1989) for libel and reckless conduct arising from the same transaction.

The parties here are embroiled in a good deal of litigation in New Jersey state and federal courts on related matters, though the claims before this court have not yet been raised elsewhere. The foremost is probably a suit filed by Klauder against Hereford and two of its general partners in Cape May County Superior Court on July 17, 1989, alleging breach of an April 28, 1989 condominium purchase agreement. Hereford and a partner filed a third-party complaint against K & N and some John Doe subcontractors sometime between September 21, 1989, and October 4, 1989 [1] for breach of the September 18 contract. K & N has sued Garden State Title Agency, Inc. in the United States District Court for the District of New Jersey, alleging, *inter alia*, negligent title transfer for units in the condominium project that is the subject of the disputes before this court. K & N has also used Camden County Superior Court to sue City Federal Savings and Loan for violating the terms of the September 18 contract that governed payment to a construction draw account. Finally, K & N has sued Construction Equipment Services, Inc., in Cape May County Superior Court

---

1. The copy attached as Exhibit C to Defendants' Reply bears no date stamp; the dates above are the date typed on the complaint and the date that the reply was filed in this court.

for breach of its subcontract for work arising from the September 18 contract.

Hereford and Murtaugh have filed a motion to dismiss for lack of jurisdiction over the subject matter (Fed.R.Civ.P. 12(b)(1)), lack of jurisdiction over the person (Fed.R.Civ.P. 12(b)(2)), improper venue (Fed.R.Civ.P. 12(b)(3)), failure to join an indispensable party (Fed.R.Civ.P. 12(b)(7), 19), and *forum non conveniens*. In the alternative, they seek a change of venue under 28 U.S.C. §§ 1404 & 1406(a) to the District of New Jersey at Camden. For the reasons presented below, the motions are denied.[2]

## I. *Subject Matter Jurisdiction*

The first argument—lack of subject matter jurisdiction—is advanced only in the notice of motion. In any event, defendants do not challenge any of the predicates to this court's diversity jurisdiction. K & N and Klauder are Floridians, as stated by Klauder's uncontested affidavit. While defendant Murtaugh disputes Klauder's contention that Hereford maintains a presence in Pennsylvania, plaintiffs do state without dispute that Hereford is a New Jersey corporation and that Murtaugh is a New Jersey citizen. Even if Murtaugh's averments are accepted, diversity remains complete. Defendant also does not argue that this dispute is valued at under $50,000, the amount now required under 28 U.S.C. § 1332(a). This court thus has subject matter jurisdiction.

## II. *Personal Jurisdiction*

Defendants challenge this court's personal jurisdiction more seriously, though with equal effect. They argue variously that (a) because neither Hereford nor Murtaugh maintained offices in Pennsylvania or otherwise subjected themselves to Pennsylvania's jurisdiction, that Pennsylvania courts can have no personal jurisdiction and b)

because the matters in dispute in No. 89–5654 are under arbitration, this court is divested of jurisdiction. These shall be addressed in turn.

### A. The Long–Arm Statute

■ It is clear that personal jurisdiction is a prerequisite to adjudication. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969). Since this court sits in diversity, it must apply Pennsylvania's long-arm statute to determine whether it has *in personam* jurisdiction. The statute states, in pertinent part, that "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b) (Purdon 1981).[3] Pennsylvania's reach is thus limited only by the strictures read into the Due Process Clause of the Fourteenth Amendment by the courts. *Koenig v. International Bhd. of Boilermakers*, 284 Pa.Super. 558, 567, 426 A.2d 635, 639 (1980).

The Supreme Court has long made clear that the Due Process Clause bars jurisdiction when the state "has no contacts, ties, or relations" with the defendant. *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). This ensures that a defendant will be able to control, to a degree, its exposure to remote actions. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). To determine when a defendant has subjected himself to foreign suit, a court must first examine whether the action arises from or relates to the defendant's purposeful contacts with the forum

---

**2.** The defendants also stated in the title of their notice of motion that they sought to dismiss the complaints under Fed.R.Civ.P. 12(a) and 12(f). These provisions do not set out grounds for dismissal. The defendants nowhere state why the procedures set out in Rule 12(a) might have been violated, nor do they ever state what portions of the complaint should be stricken under Rule 12(f) or why. These shall thus be ignored.

It would be helpful in the future if movants would relate their claims to the statutes and to the underlying facts and if they would provide support for their arguments.

**3.** Persons include corporations. 42 Pa.Cons. Stat.Ann. § 5301(a)(2) (Purdon 1981).

state ("specific jurisdiction") or, instead, if jurisdiction must be bottomed on the defendant's unrelated contacts ("general jurisdiction"). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 & n. 15, 105 S.Ct. 2174, 2181–82 & n. 15, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & nn. 8–9, 104 S.Ct. 1868, 1872 & nn. 8–9, 80 L.Ed.2d 404 (1984); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). For specific jurisdiction, the Due Process Clause's demands are met if the defendant has "carr[ied] on a 'part of its general business' " in the forum state, which is sufficient to put the defendant on notice that it may find itself in court as a result of its activities there. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) (quoting *Perkins v. Benguet Mining Co.,* 342 U.S. 437, 438, 72 S.Ct. 413, 414, 96 L.Ed. 485 (1952)); *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567. To secure general jurisdiction, the plaintiff must show that the defendant had "systematic and continuous" contacts with the forum state. *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160; *see also Provident,* 819 F.2d at 437; *Beatrice Foods Co. v. Proctor & Schwartz, Inc.,* 309 Pa.Super. 351, 455 A.2d 646, 649 (1982).

Hereford and Murtaugh argue vigorously that they lack systematic and continuous contacts with Pennsylvania and hence that this court may not assume jurisdiction. As the statement of the law above indicates, this ignores the concept of specific jurisdiction. Even should Hereford and Murtaugh be correct, which this court need not and shall not address, they would not therefore have removed themselves from this court's reach.[4]

Turning first to the breach of contract action, we find the facts hotly disputed. Klauder avers that Hereford's stationery indicated that it maintained its office in Philadelphia, Pennsylvania; that he believes fraud to have occurred in Philadelphia; that he negotiated the contract and the change orders, in part with Murtaugh and always with Hereford officers, in Philadelphia, and often in Hereford's offices; that change orders were signed in Philadelphia; and that the contract (appended to the complaint in No. 89–5654) states that Hereford's office is in Philadelphia. In contrast, Murtaugh avers that Hereford "does not do business in the State (sic) of Pennsylvania" and at no time wished to subject itself to Pennsylvania's jurisdiction and that he has "no[t] even minimal contacts" in Pennsylvania and never intended to bring himself within Pennsylvania's jurisdiction.

The Murtaugh affidavit and the representations of his and Hereford's counsel seem somewhat disingenuous. The letters appended to the complaint in No. 89–5129 and the contract appended to the complaint in No. 89–5654 clearly give Hereford's address as 830–A South Street, Philadelphia, Pennsylvania. Moreover, Murtaugh signed the letters, which certainly diminishes the value of his asseverations. In their reply, defendants assert only that the address on the letterhead was "an administrative mistake" and that "Hereford Associates at all times attempted to rectify that mistake by crossing out that address and indicating the correct address." First, the copies of the letters that have been made part of the record here show no such crossing out. Second, the contract attached to the complaint bears the Philadelphia address— typed on, with no elisions. These facts substantially vitiate the force of defendants' assertions. Since defendants have otherwise presented nothing save "bald and unconvincing narrative"[5] to counter the specific, documented allegations of the plaintiffs, the evidence lists heavily toward the plaintiff. Whatever Hereford's intentions might have been, it is abundantly clear that Hereford acted in Pennsylvania

---

4. The plaintiff assumes the burden of demonstrating that the parties have contacts with the forum state that support *in personam* jurisdiction. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984).

5. W.S. Gilbert, The Mikado, Act II, line 591, in *The Annotated Gilbert and Sullivan* 255, 337 (I. Bradley ed. 1982) (Pooh–Bah).

on matters relating to this contract. This court must thus determine whether defendant's contacts with Pennsylvania qualify as the "minimum contacts" required by *Keeton* and *World–Wide Volkswagen.*

Following Judge Pollak's analysis in *Strick Corp. v. A.J.F. Warehouse Distrib., Inc.*, 532 F.Supp. 951, 958 (E.D.Pa.1982), the most pertinent factors are "(1) the character of the pre-contract negotiations; (2) the location of these negotiations; (3) the terms of the ... agreement; and (4) the type of [contract involved]." *See also 26 Designs, Inc. v. Skibells, Inc.*, No. 89–0050, slip op. at 3–4, 1989 WL 29260 (E.D.Pa. Mar. 28, 1989). The pre-contract negotiations are averred to have occurred in part in this district. Though the importance of these negotiations is uncertain, it appears that many, including most of the change orders, took place here, which suggests strongly that the negotiations here were significant. The third *Strick* criterion—the terms of the agreement—moves somewhat against this district, as does the fourth. Since this is a contract to build condominiums in New Jersey, there would be some reason for the parties to believe that New Jersey law might apply. There are, however, no forum selection or choice of law clauses in the contract.

Although the *Strick* analysis does not produce unequivocal results, this court finds that there were enough explicit forum contacts to warrant personal jurisdiction over the defendant. The negotiations, combined with the business address on the contract itself and on the correspondence, make clear the defendant's purposeful contact with this jurisdiction. To be sure, the third and fourth *Strick* criteria point away from Pennsylvania. However, it must be remembered that *Strick* was decided before *Keeton*, in which the Court made yet clearer the liberality with which courts may extend their long-arm jurisdiction within the Due Process Clause's ambit. Surely the conduct here qualifies as "part of [defendant's] general business." This court thus may exercise *in personam* jurisdiction in this action. *See, e.g., Mantua Oil, Inc. v. C.J. Mktg. Co.*, 621 F.Supp. 1194, 1196 (E.D.Pa.1985) (jurisdiction proper where negotiations in Pennsylvania); *Webb Research Corp. v. Rockland Indus., Inc.*, 580 F.Supp. 990, 993 (E.D.Pa.1983) (same).

Likewise, the defamation action, No. 89–5129, falls within this court's specific jurisdiction. Klauder, against only the general denials of Murtaugh, avers that the letters signed by Murtaugh on Hereford stationery bore a Philadelphia letterhead and that a defamatory message was sent by Murtaugh to the American Arbitration Association in Philadelphia. These were made part of the record as attachments to the complaint. Plaintiffs' brief also points out that one letter sent from Philadelphia was sent to, among others, plaintiffs' counsel, who avers that he received the letter labeled "C" in Philadelphia. This fits squarely within *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), in which the Supreme Court upheld long-arm jurisdiction for a libel action based on a statement published where neither plaintiff nor defendant resided. The Court held that a state has an interest "in protecting [nonresidents] from libel, as well as in safeguarding its populace from falsehoods." 465 U.S. at 777, 104 S.Ct. at 1479. Like New Hampshire, the forum state in *Keeton*, Pennsylvania has adopted the "single publication rule." 42 Pa.Cons.Stat.Ann. § 8341 (Purdon 1982). Neither long-arm statute restricts actions in tort to state residents. *Keeton*, 465 U.S. at 777, 104 S.Ct. at 1479; 42 Pa.Cons.Stat.Ann. § 5322(a)(3)-(4) (Purdon 1981). Thus, this court also has personal jurisdiction over the defendants in No. 89–5129.

### B. Arbitration

The defendants have also argued that the pending arbitration action removes this court's jurisdiction in No. 89–5654. They are mistaken. The Federal Arbitration Act, 9 U.S.C. §§ 1–9, does require that any court's actions be *stayed* pending arbitration, as long as the matter is referred to arbitration upon a written agreement and one party moves for a stay. 9 U.S.C. §§ 2–3; *see also Southland Corp. v. Keating*, 465 U.S. 1, 11–12, 104 S.Ct. 852, 858–

859, 79 L.Ed.2d 1 (1984) (Federal Arbitration Act applies to states). The plain language of the statute, buttressed by judicial constructions, makes clear that courts may not *deny* jurisdiction on that basis. *The Anaconda v. American Sugar Refining Co.*, 322 U.S. 42, 44, 64 S.Ct. 863, 865, 88 L.Ed. 1117 (1944). Were that so, the courts would lose supervisory powers over arbitration, save by costly separate actions. Consequently, this court must, and shall, retain its jurisdiction.

### III. *Improper Venue*

▆ Following Fed.R.Civ.P. 12(b)(3), the defendants argue that both actions must be dismissed because of improper venue.[6] In both actions, they argue that, since the defendant is a New Jersey resident and since the contract allegedly breached was executed in New Jersey and was to be performed in New Jersey, the proper venue cannot be in Pennsylvania.

The federal statute governing venue for diversity actions is 28 U.S.C. § 1391(a), which states that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." This is made clearer by § 1391(c) on corporate citizenship: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." The first question before this court is thus whether K & N and Klauder have brought one cause of action or two. If one, then the criteria above must cover all elements; if two, then they must apply to each cause of action. *See, e.g., Beattie v. United States*, 756 F.2d 91, 100 (D.C.Cir.1984); *Scotch Whisky Ass'n v. Majestic Distilling Co.*, 681 F.Supp. 1297, 1301 (N.D.Ill.1988); *International Patent Dev. Corp. v. Wyomont Partners*, 489 F.Supp. 226, 230

(D.Nev.1980); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3808 (1986).

Here, the defendants argue that, since the defamation and breach of contract actions arose from the same business transaction, they are simply parts of the same cause of action. While their initial assumption is unimpeachable, their conclusion does not follow from it. Establishing a common origin for two possibly similar causes of action only begins the inquiry. As the Supreme Court has stated, the real question is whether the relief sought is "to put an end to an essentially single wrong, however differently characterized, not to enjoin distinct wrongs constituting the basis for independent causes of action." *Hurn v. Oursler*, 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148 (1933). Focusing on the wrongs shows that the causes of action here are distinct. Breach of contract sounds, obviously, in contract; the remedies are designed to make the breached-against party whole. *Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc.*, 343 Pa. 270, 278, 22 A.2d 709 (1941); Restatement (Second) of Contracts § 344 and introductory note (1981). Defamation, on the other hand, is a tort; its damages are intended in part to salve the party whose reputation has been besmirched. *Corabi v. Curtis Pub. Co.*, 441 Pa. 432, 473, 273 A.2d 899 (1971); Restatement (Second) of Torts §§ 620–23 and special note (1977). The wrongs—breach of contract and harm to reputation—are different, and so the causes of action must stand apart.

That decided, we must turn to whether the strictures of § 1391 are obeyed. In No. 89–5129, the defamation action, the plaintiffs are Floridians, Hereford is for this purpose both a New Jerseyite and a Pennsylvanian, and Murtaugh is a New Jerseyite. The purely geographical part of this section thus does not support a Pennsylvania forum, though it would support Florida or New Jersey. The "in which the claim arose" provision, however, makes this court a proper venue.

---

**6.** The relevant statute, 28 U.S.C. § 1406(a), allows the district court in which venue is challenged either to dismiss the action or to transfer

it to the appropriate district. The possibility of transfer will be discussed more fully below.

Determining whether a claim has arisen in a venue is a matter of federal law. *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979). In *Leroy,* the leading case on such determinations, the Court appears to have resolved the issue—at least for close cases—by weighing the contacts between the defendant and the possible fora, as well as the availability of witnesses and the accessibility of other relevant evidence. 443 U.S. at 185–86, 99 S.Ct. at 2717–18. The Court left unresolved the means by which lower courts might resolve the more routine cases in which the locus is relatively obvious. *See* 1A J. Moore, *Moore's Federal Practice* ¶ 0.342[5.–2–2], at 4165–66 (1989). As a result, this court will employ a modified version of the now-common "weight of contacts" test first espoused by Judge John Lord in *Philadelphia Hous. Auth. v. American Radiator & Standard Sanitary Corp.*, 291 F.Supp. 252 (E.D.Pa.1968). This, as stated, requires that the court examine whether a "significant and substantial" part of the offense occurred in the district; if the contacts rest more heavily in one jurisdiction than in others, the jurisdiction with the weightiest contacts prevails. *Philadelphia Housing,* 291 F.Supp. at 260–61; *see also Lieb v. American Pac. Int'l, Inc.,* 489 F.Supp. 690, 695–96 (E.D.Pa.1980). There is intrinsic tension here; the first part of the test suggests that more than one jurisdiction could have the requisite contacts, while the second does not. Moreover, the *Leroy* holding suggests that the first part, at least, needs some qualification. Still, using a comparative method, whether stated as "weight of the contacts" or "predominant locus," has received enough judicial and academic approbation that it may reasonably guide this court's decision. *See, e.g.,* 1A J. Moore, *Moore's Federal Practice* ¶ 0.342[5.–2–2], at 4161–63, 4167–68 (1989) (collecting cases and setting out suggested test); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*

§ 3806, at 61–66 (1986) (approving of weight of contacts test; is consistent with *Leroy* ).

Here, the allegedly defamatory letters were written on stationery with a Pennsylvania letterhead and hence might reasonably be expected to have been written in Pennsylvania. The letters were sent to, among others, residents of this District. The note to the American Arbitration Association was sent to Pennsylvania. Hereford is, at least in part, a Pennsylvania firm, insofar as the record shows that it has transacted business in Pennsylvania, including the contract that established the parties' relationships. Against this, we have Murtaugh's residence in New Jersey and plaintiffs' in Florida, as well as Hereford's partial residence and incorporation in New Jersey. In addition, some of the allegedly defamatory letters were sent to other states, including Florida and probably New Jersey.[7] Most of the contacts, including those most critical for a defamation action, appear to have occurred in this District. Moreover, while some witnesses would undeniably have to travel from New Jersey were the action here, others would have to travel from Pennsylvania were the action in New Jersey.

Although these decisions are necessarily highly fact-dependent, other courts facing venue disputes in defamation actions have resolved them similarly. For example, in *Davis v. Costa–Gavras,* 580 F.Supp. 1082, 1088–90 (S.D.N.Y.1984), the court placed venue in the district in which the defendant researched and wrote libelous material, most publication occurred, and some key witnesses resided, even though the primary place of injury was elsewhere. Similarly, the court in *Akbar v. New York Magazine Co.,* 490 F.Supp. 60, 67 (D.D.C.1980) found the contacts sufficiently weighty where some witnesses and evidence were in the district, the underlying events occurred in the district, and some plaintiffs resided in the district, though the defendants were located elsewhere and editorial decisions on

---

**7.** It is not necessary that a defamatory publication have occurred in Pennsylvania for plaintiff to recover for it. As noted earlier, Pennsylvania subscribes to the "single publication rule," un-

der which a single publication of a libel within a jurisdiction allows recovery for all damages resulting from the libel's publications. 42 Pa. Cons.Stat.Ann. § 8341 (Purdon 1982).

libelous material were made where the defendants resided. Indeed, the court in *Jaffe v. Dolan*, 264 F.Supp. 845, 848 (E.D. N.Y.1967) stated flatly that the claim arose where the libel was published, though admittedly this is an early case. This court thus concludes that the defamation claim arose, for the purposes of § 1391(a), within this district.

■ No. 89–5654, the breach of contract action, presents an easier problem. There the defendant, Hereford, is both a Pennsylvania resident and a New Jersey resident for these purposes, because, as the contract, letters, and Klauder affidavit indicate, it conducted business in Pennsylvania during the relevant period. Even the Hereford reply and attached affidavit acknowledge that some negotiations took place in Pennsylvania. Since Hereford is the sole defendant, the residence requirement is met. This court thus does not have to address whether the breach of contract and fraud claims arose in this jurisdiction to conclude that venue is proper under §§ 1391(a) and 1391(c).

## IV. *Failure to Join a Party*

The next item in the defendants' litany is the plaintiffs' supposed failure to join an indispensable party. The defendants, however, never do more than identify (and only in their reply brief) some possible parties and assert that they are necessary.[8] Without providing some support for the argument that the parties are necessary, the defendant cannot hope to prevail. Should such parties appear later in the litigation, the rules of impleader and interpleader will

8. Defendants assert that the third-party complaint attached as Exhibit C to their reply identifies John Morrell Plumbing & Heating, Inc. and Construction Equipment Services, Inc. as co-defendants with K & N and sets out why these parties would be liable and should be joined here. In fact, the complaint *nowhere* identifies these firms as parties, relying instead on numinous John Does. Again, the statement made by the defendant seems, on the facts before this court, disingenuous.

9. Moreover, even an extremely liberal reading of the complaint referred to would not allow the firms named in the reply brief to be considered

be available to satisfy any concerns of the defendants. Fed.R.Civ.P. 14, 22.[9]

## V. *Abstention*

■ Defendants argue, under the rubric of improper venue, that a pending action among the parties in New Jersey state court is the proper locus for this litigation. This is the wrong heading for such a motion, which goes rather to whether this court should abstain or, as below, to *forum non conveniens*. Both for factual and for legal reasons, this court does not find abstention warranted.

The primary New Jersey action, filed on July 17, 1989, was started by Klauder against Hereford, Aqua Development Company, and Recreational Development Corporation.[10] It alleges breach of a contract for the purchase of a condominium. The contract identified there was signed on or about April 28, 1987, and dealt specifically with the purchase of unit B205 of Aqua Beach Condominium. Since then, and after the filing of the federal suits here, Hereford has filed a third-party complaint in state court that alleges breach of a September 18, 1987 contract for the construction of twenty-four condominium units in the Aqua Beach/Ocean Cove Townhomes and Condominiums project. Hereford and Murtaugh have also directed the court's attention to a number of actions filed by Klauder or K & N in New Jersey state and federal courts based on the Hereford–K & N contract of September 18 and associated dealings. The federal suits in question stem from the September 18, 1987 contract alone.

indispensable parties for the purposes of this motion. The parties named are subcontractors to K & N. Consequently, they would not logically be defendants where the issues in question are defamation and breach by *Hereford*. The subcontractors might be relevant were Hereford to bring a counterclaim against K & N of the sort raised in that complaint. If so, though, they would be third-party defendants and hence would neither destroy diversity nor be indispensable to the primary action.

10. The last two are general partners of Hereford.

Although the parties in the state and the federal actions are similar, the contracts at the root of the actions are not necessarily the same. Moreover, not all of the federal parties are parties to the state action, and vice versa. The actions are thus not truly concurrent, in the sense used by the Supreme Court in, for example, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). For example, the defamation action exists only in federal court. Even to the extent that the actions *are* concurrent—that is, to the extent that the state action implicates the September 18 contract—they have been only since Hereford brought its third-party action, well after the federal suits were filed. It would be anomalous, to say the least, if a later-filed state action were able to oust a federal court's jurisdiction over an earlier suit, especially where the state court action presents the parties in reverse posture. In any event, the Klauder and K & N claims are *not* now before the state court. This by itself would warrant denying abstention; at present there is simply no "race to the courthouse," because Klauder and K & N pursue the relief they seek only in this forum.

Even if the suits were over the same *res*, though, this court would remain fully justified in keeping jurisdiction. There are four basic headings for abstention, of which only one even arguably applies here. Since there are clearly no federal constitutional questions joined here which might be avoided were the action filed in state court, abstention under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is improper. Likewise, since there is no question of injunctive relief against state proceedings, whether criminal or civil, *Younger* abstention is inappropriate. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Schall v. Joyce*, 885 F.2d 101, 107–12 (3d Cir.1989). This action also does not raise any especially unclear or unsettled issues of state law, particularly over questions of great public import, and so *Burford* abstention does not apply. *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244; *Louisiana Power & Light v. Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). This leaves *Colorado River* abstention, which requires more detailed explication.

This heading of abstention invokes "considerations of '[w]ise judicial administration, giving regard to conservation of scarce judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). Such general considerations are, however, to be kept bridled; the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" is only to be set aside in the "exceptional" case. *Colorado River*, 424 U.S. at 817, 818, 96 S.Ct. at 1246, 1246.[11] A number of factors go into decisions whether to abstain, most notably whether the first court assuming *in rem* jurisdiction may exclude other courts from doing the same. Others include the inconvenience of the federal forum, the goal of avoiding piecemeal litigation, the order in which jurisdiction was obtained in the competing fora, the relative progress of the state and federal proceedings, the presence or absence of concurrent jurisdiction, and the source of governing law. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15–16, 23, 103 S.Ct. 927, 936–937, 941, 74 L.Ed.2d 765 (1983); *Will v.*

---

**11.** Consider the stern admonition of Chief Justice Marshall: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not. The one or the other would be treason to the constitution." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821). Some modern commentators have been equally unyielding. *See, e.g.,* Redish, *Abstention, Separation of Powers, and the Limits of the Judicial Function,* 94 Yale L.J. 71, 76–79 (1984) (abstention violates separation of powers because it judicially denies a congressional grant of jurisdiction).

*Calvert Fire Ins. Co.*, 437 U.S. 655, 666, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978); *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246; *Ingersoll–Rand Fin. Corp. v. Callison*, 844 F.2d 133, 136 (3d Cir.1988); *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir.1985). In its balancing, which rests within the court's discretion, the court should keep in mind that "the circumstances which will justify [stay or dismissal] are extremely limited." 1A J. Moore, *Moore's Federal Practice* ¶ 0.203[4] at 2153 (1989).[12]

It thus remains for this court to fit the facts to the framework. First, neither court has *in rem* jurisdiction over this action. Though the contract concerns construction, the dispute is not over a clouded title or some similar matter for which the land itself is the subject of dispute. Consequently, this first criterion weighs for neither side. Second, the federal forum is very near the state forum. Cape May Court House, the county seat of Cape May County, New Jersey, is, roughly, only sixty miles from Philadelphia. While some of the defendants would have to travel from New Jersey, as would some of their witnesses, were the action here, others would have to travel from Pennsylvania were the action in New Jersey state court. Given this proximity and the likelihood that such burden as there is would not disappear through a move to New Jersey, this factor is likewise neutral.

Third, the danger of piecemeal litigation would be present wherever the action might be brought. While the breach of contract actions are subject to arbitration and, under the Federal Arbitration Act, would produce stays in state or federal court upon motion (*Cone*, 460 U.S. at 19–20, 103 S.Ct. at 939), the defamation action might not be.[13] Consequently, dismissal would not necessarily remove the risk of piecemeal litigation (for example, on challenging the results of arbitration). In any event, the state actions are not presently parallel. Although defendants have recently created some potential parallelism through their third-party complaint in the state law action, the actual issues joined in state court and in federal court are complementary. Either side could, as far as the

**12.** The factors to be considered are the same for stay and dismissal. This comports with the Court's observation in *Cone* that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." 460 U.S. at 28, 103 S.Ct. at 943. After all, a stay would eventually render superfluous any pending federal litigation through the devices of collateral estoppel and *res judicata*. *See, e.g.,* Redish, 94 Yale L.J. at 96–97.

**13.** This point is far from settled. Under the statute, arbitrable disputes include those "arising out of [a] contract." 9 U.S.C. § 2. While the breach of contract actions very plainly do so, defamation resulting from letters sent because of alleged faulty performance stands at some remove; using the terms of torts, proximate cause may prove an impediment. The contract itself is not helpful. The arbitration clause, contained in article 4.5 of AIA Document A201, "General Conditions of the Contract for Construction" (incorporated by reference into the September 18 contract at issue here), mirrors the statutory language: "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration ..."

Federal law must be used to interpret such clauses, as well as to interpret the Federal Arbitration Act itself. *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Becker Autoradio v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir.1978). Most cases examining arbitrability and defamation do so over employment contracts in the securities industry, which follow forms and procedures more wide-ranging than those here. Even given this, there is a split among the circuits on arbitrability. *Compare Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78, 81–82 (2d Cir.1983) (defamation not arbitrable) *with Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826 (D.C.Cir.1987) (defamation arbitrable); *Aspero v. Shearson Am. Exp.*, 768 F.2d 106, 108–09 (6th Cir.1985) (same); *Austin Mun. Sec. v. National Ass'n of Sec. Dealers*, 757 F.2d 676, 696 (5th Cir.1985) (same); *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1166–67 (8th Cir.1984) (same). There is very little case law elsewhere, though, interestingly, Judge Newcomer of this district found in favor of arbitrability in a defamation action involving K & N and Klauder. *Klauder and Nunno Enters., Inc. v. Choudhury*, No. 87–1297, 1987 WL 17548 (E.D.Pa. Sept. 24, 1987) (1987 U.S. Dist. LEXIS 8699); *but see Popper v. Monroe*, 673 F.Supp. 1228, 1231 (S.D.N.Y.1987) (only defamation actions requiring contractual interpretation arbitrable). This court is not yet faced with the issue, though, and thus need not resolve it.

information before this court allows it to conclude, raise the remaining issues in the other forum. Finally, defendants have not demonstrated that diversity jurisdiction would prove inadequate to cover these controversies. All of the state and federal actions filed by Klauder or K & N are diverse. It is possible, as Hereford argues, that the third-party complaint it recently filed might have New Jerseyites on opposite sides. They have not shown this, though, as the complaint lists only John Doe third-party defendants and K & N. Besides, the John Does they sue are subcontractors to K & N. Hereford would lose nothing by suing only K & N, because, as contractor, K & N is liable for the breaches of its subcontractors (unless a novation absolves it). As Professor Corbin has observed, "A duty can never be escaped by assignment or delegation." 4 A. Corbin, *Corbin on Contracts* § 866, at 455 (1951); *see also, e.g., Brooks v. Hayes,* 133 Wis.2d 228, 395 N.W.2d 167, 170 (1986); Restatement (Second) of Contracts § 318(3) and comment d (1981). K & N is quite capable of impleading its errant subcontractors here, and there is no information before this court that leads it to believe that diversity would fail there.[14]

Fourth in the list of relevant factors is the order in which the courts obtained jurisdiction. Though this is a bit more complex than usual, this comes out in favor of federal jurisdiction. The initial state law action, which did not involve the contract in question here, was filed after the libel action but before the breach of contract action. Since then, Hereford has filed its own breach of contract action as a third-party plaintiff in the state law action, implicating for the first time the September 18 contract. It is thus quite clear that this court took jurisdiction over the libel suit first; indeed, the state court *still* has no pending suit on libel. The September contract also first became the subject of suit in federal court, though it has been appended to a previously-filed state action by recent pleadings. This factor thus comes out in favor of this court's jurisdiction. The fifth factor—progress—likewise comes out to this forum's advantage. The dispute in question here has not yet been raised in state court. Admittedly, there is little difference; neither action has proceeded for more than a few months. But such advantage as there is goes to this forum. Number six, concurrent jurisdiction, is irrelevant here. Since the suit is here in diversity, both fora may exercise jurisdiction. Finally, the source of governing law is very likely New Jersey, given the place of performance. This factor comes out as defendants would wish.

So, then, most factors come out essentially neutrally. While one—the source of governing law—points toward New Jersey, the progress of the suit and its correlate, the order in which the courts obtained jurisdiction, point toward Pennsylvania. Even a rudimentary balancing, with the pans first weighted, as *Colorado River* mandates, toward federal jurisdiction, does not result in the exceptional circumstance that would warrant our jurisdictional abnegation. *See Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247 ("[o]nly the clearest of justifications will warrant dismissal").

## VI. *Forum Non Conveniens*

■ The movants have asked that these actions be dismissed under *forum non conveniens.*[15] This doctrine, which had its federal origin in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947),

---

**14.** Since K & N is a Florida corporation, and the subcontractors for a New Jersey project are almost certainly New Jerseyites or Pennsylvanians, there should be no difficulties. If there are, K & N will have to face the consequences, and it has shown itself willing to do so by its presence here.

**15.** Actually, the movants have asked that this court either dismiss or transfer to state court under *forum non conveniens.* It is axiomatic that dismissal is the only option given a court

under *forum non conveniens,* though, and so transfer to state court is not possible. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981); *DeMateos v. Texaco, Inc.,* 562 F.2d 895, 899 (3d Cir.1977); F. James & G. Hazard, *Civil Procedure* § 2.31 (3d ed. 1985) (dismissal only option, though court may condition it on defendant's submission to jurisdiction elsewhere or on other equitable considerations).

and *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), is used to divest a plaintiff of its choice of forum when another forum has jurisdiction and when trial in the original forum would prove grossly oppressive to the defendant, relative to the plaintiff's convenience, or when sound judicial administration would dictate a shift. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981); *Koster,* 330 U.S. at 524, 67 S.Ct. at 831. The ultimate question is thus whether trial in the plaintiff's chosen forum will best serve both justice and convenience. *Koster,* 330 U.S. at 527, 67 S.Ct. at 833; *Lony v. E.I. Du Pont de Nemours & Co.,* 886 F.2d 628, 632–33 (3d Cir.1989); *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 42 (3d Cir.1988).

Such a determination is left to the "'structured discretion'" of the trial judge. *Lony,* 886 F.2d at 632 (quoting *Pain v. United Technologies Corp.,* 637 F.2d 775, 781 (D.C.Cir.1980)). The court must first determine whether an alternative forum exists. If so, the court must balance various public and private interest factors laid out in *Gilbert* to determine whether the cases before it should be dismissed. *Lony,* 886 F.2d at 632; *Lacey,* 862 F.2d at 43. The factors may be laid out as follows:

A. Private Interest
1. Relative ease of access to sources of proof;
2. Availability of compulsory process for attendance of unwilling witnesses;
3. Cost of obtaining attendance of willing witnesses;
4. Difficulty in viewing premises, if relevant;
5. Other practical problems that make trial relatively easy, expeditious, and inexpensive;
6. Enforceability of the judgment.

B. Public Interest
1. Congestion of courts;
2. Relation of the community to the litigation, including unfairness of imposing jury duty on citizens of an unrelated forum;
3. Desirability of having court familiar with local law try the case, for diversity matters.

*Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. at 843. Though these factors are "by no means exhaustive," they are at least complete enough to begin inquiry. *Van Cauwenberghe v. Biard,* 486 U.S. 517, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988).

The burden of establishing the need to dismiss under *forum non conveniens* rests upon the movant. *Lony,* 886 F.2d at 632; *Lacey,* 862 F.2d at 43–44. On examining the affidavits and related material provided it, the court must not overturn plaintiff's choice of forum "unless the balance of factors is strongly in favor of the defendant." *Lacey,* 862 F.2d at 43.

The first question is whether New Jersey state courts could, as urged by movants, provide an alternate forum. This court holds that they would. Since both Hereford and Murtaugh are New Jersey residents, and since no exclusively federal claims are stated against them, New Jersey courts could take jurisdiction. Answering the second question requires a close look at the *Gilbert* factors and related equitable concerns.

First, this court must determine to what extent plaintiff's choice of forum should be taken into account. Normally, it is entitled to a great deal of weight, though it may of course be overcome. Here, though, the plaintiffs have not chosen their home forum of Florida. This means that their choice of this district, though perhaps flattering, is not entitled to as much respect as if it were their home. *Piper,* 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Koster,* 330 U.S. at 524, 67 S.Ct. at 833; *Lacey,* 862 F.2d at 45–46. This court finds, however, that the weight to which it is entitled is not diminished greatly. It must be remembered that choice of forum is accorded weight because it is presumed that the choice is made because it is convenient. *Lony,* 886 F.2d at 634. While Florida would no doubt be convenient for plaintiffs themselves, the project is in New Jersey, the contract was in large part negotiated in Pennsylvania and New Jersey, the defam-

atory letters were sent from Pennsylvania and perhaps New Jersey, and the letters were sent to, among other places, Pennsylvania and possibly New Jersey. This agglomeration of regional contacts suggests that most of the witnesses and evidence that would be required would be found in this area, rather than in Florida. Though these contacts are diluted by dispersal among New Jersey and Pennsylvania, the presence of so many important contacts in the area amounts to the "strong showing of convenience" needed to overcome, at least in part, any dubiety arising from the plaintiffs' distance. *Lony,* at 634. Consequently, though this court will award plaintiffs' forum choice less deference than it would that of a Pennsylvanian, it will not discount it to the degree normally done for a foreign plaintiff. *See, e.g., Piper,* 454 U.S. at 256, 102 S.Ct. at 266 (Scottish plaintiff's forum choice receives diminished deference in American court); *Bastas v. Atlantic Maritime Enters. Corp.,* No. 86–6962, 1988 WL 48547 (E.D.Pa. May 16, 1988) (same; Greek plaintiff).

With this in mind, we must now consider the *Gilbert* factors. The first, ease of access to sources of proof, is unlikely to move appreciably in either party's favor. Cape May County and Philadelphia are roughly sixty miles apart, and this court may fairly take judicial notice of the existence of federal and state highways connecting them. Even Allentown is accessible from Cape May in less than a morning's drive. As to the sources of proof, the most relevant items for the breach of contract claim are likely to be documents available in either the Hereford or K & N headquarters and information gleaned from subcontractors and site inspectors. These individuals have not been identified in the affidavits, though they are likely to be in New Jersey. The defamation action would likely require depositions from people in New Jersey, Pennsylvania, and Florida. On balance, this favors the movant; however, geographical factors, as noted above, count for little when the venues are close. *Cf. Computers Plus, Inc. v. AGS Enters., Inc.,* No. 89–1406, 1989 WL 37112 (E.D.Pa. Apr. 12, 1989) (1989 U.S.Dist. LEXIS 3972 at *4–5)

(for § 1404(a), ninety-mile difference trivial).

The second factor is availability of compulsory process. This is governed here by Fed.R.Civ.P. 4(f) and 45, which grant this court service within both this district and a one hundred mile radius of the trial locus. This cuts a wide swath through southern New Jersey. In contrast, state courts may compel process only within the state. Since it seems clear that witnesses will be drawn from both New Jersey and Pennsylvania, and since it is likely that the New Jersey witnesses may be reached by this court's "bulge jurisdiction," this factor must be considered neutral.

The third private factor is cost of obtaining attendance. Again, since the competing courthouses are fairly close, the comparative costs are slight. On the showing made here, it is impossible to say where the greater burden lies, nor would it be possible until trial was imminent and this motion inappropriate. This factor, weak at best, must be considered neutral. The fourth, the view of the premises, is unlikely to be needed by this court. There would naturally be testimony from those who have, but their time has been considered above. The final catchall private factor is likewise not important. Ease, cost, and speed are of relatively little relevance when arbitration is called for, as it certainly is for the breach action and may be for defamation. The private factors thus weigh slightly for the movant.

The public factors tend to move in the other direction, though. The first, court congestion, greatly favors this court. In the Eastern District of Pennsylvania, the last statistical compilation shows that the average time from filing to disposition for civil cases was six months. Administrative Office of the U.S. Courts, *Federal Court Management Statistics: 1988* 57 (1988). In contrast, New Jersey state trial courts took an average of 11.9 months to terminate civil cases in 1987, while those in Cape May County took 10.7. Administrative Office of the Courts, *Annual Report of the New Jersey Judiciary: 1987* 4–7A, 8–6 (1988). The substantial difference favors

the plaintiff. The second factor is the relation of the community to the litigation. This cuts somewhat in the movants' favor. This contract was to build condominiums in New Jersey and the defendants are primarily New Jerseyites. The breach claims thus have more of a local tinge in New Jersey than elsewhere. The defamation action is less connected, though; the plaintiffs are Floridians, the only information presented on the publication of the alleged libel shows that it was sent to Pennsylvania and Florida, and the letters were apparently sent from Pennsylvania. This action has only the residence of the defendants and the less useful connection of the project locus to tie it to New Jersey. While the breach of contract claim seems more connected with New Jersey than the defamation claim is to Pennsylvania, the net gain for defendants is not large.

This leaves the principle that local courts should apply local law. To resolve this, it is necessary for this court to make a preliminary choice of law analysis under both Pennsylvania and New Jersey doctrines. First, this court, were it to retain jurisdiction, would have to apply Pennsylvania choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania courts, one treatise ruefully observes, "rather indiscriminately use all of the [choice-of-law] approaches." E. Scoles & P. Hay, *Conflict of Laws* § 18.21, at 669 (1984). The general approach used by recent Pennsylvania opinions is drawn primarily from the Restatement (Second) on Conflict of Laws, with a gloss of governmental interest analysis à la Brainerd Currie. *See, e.g., Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 539 A.2d 871 (1988); *see also* Scoles & Hay at § 2.6 (discussion of Currie). The relevant Restatement section for contracts is § 188, which provides that the law of the state with the "most significant relationship" to the transaction should apply. Restatement (Second) of Conflicts of Law § 188(1) (1971). It lists a number of criteria to be used when appropriate, including the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the

domicile or residence of the parties. *Id.* at § 188(2). Comment e suggests that, when the place of performance is common to the parties, it is fairly clearly the most significant. This is buttressed by the importance of the situs of the contract's subject matter, particularly, as the comment points out, for contracts involving land. Since the activities about which K & N complains arise from a contract to build in New Jersey and from the failure of a New Jersey firm to pay, the facts as presented indicate that a Pennsylvania court would apply New Jersey law. *See, e.g., Nationwide Mut. Ins. Co. v. Walter*, 290 Pa.Super. 129, 137, 434 A.2d 164, 167–68 (1981) (insurance contract). This is especially so when the nexus with Pennsylvania is the partial negotiation of the contract and the partial residence of Hereford. Though these are not inconsiderable, the usual Currian plaintiff-protection rules cannot apply. Neither can Pennsylvania assert as strong an interest in the need to maintain honest contracting as can New Jersey. Accordingly, this court believes, at least as a preliminary estimate, that New Jersey law would apply were it to take jurisdiction.

For the defamation action, the relevant Restatement provision states that the locus of the publication will generally determine the law, save where some other state has a more significant relationship. Restatement (Second) of Conflict of Laws § 149 (1971); *see also Denenberg v. American Family Corp.*, 566 F.Supp. 1242, 1253 (E.D.Pa. 1983). The difficult problem here is that the plaintiff has alleged publication of several letters sent to individuals and groups in several states. Section 150 of the Restatement indicates that the place of plaintiff's principal place of business ordinarily supplies the law when there are multistate communications, though other laws may apply when the communication caused more injury in other states than in that of plaintiff's primary residence. *Id.* at § 150 and comment f. There appear to be three relevant communications. The first was sent to the American Arbitration Association in Philadelphia. The primary injury would thus appear to be in Pennsylvania,

since the libel was not broadcast and thus would not be expected to have reached Florida, the normal locus of injury. The second was sent to Klauder and to Hereford's counsel. A letter to the allegedly libeled individual is not considered a publication. *Jones v. RCA Music Serv.*, 530 F.Supp. 767 (E.D.Pa.1982); 2 F. Harper, F. James & O. Gray, *The Law of Torts* § 5.15 (2d ed. 1986). Since neither party has given the address of Hereford's counsel (not, gauging from the letterhead, its present counsel), the locus is unknown. The third letter was sent to Mr. Nunno of K & N, with copies to Hereford's counsel, K & N's present counsel (of Pennsylvania), and two unidentified people. Again, a letter to one principal of K & N cannot defame K & N, though it might defame Klauder. The only person identified among the other recipients is Korn, who identifies himself as a Pennsylvanian on the complaint and on other documents. Here the injury is probably primarily in Florida, though the Korn letter would implicate Pennsylvania as well. Putting these together is difficult, but suggests that a pure Restatement (Second) approach would point toward Pennsylvania or Florida law. It seems likely, though, that a false conflict would arise, as the law of defamation is well-settled. Accordingly, the Currie-inspired overlay indicates that the law of the forum is probably correct.[16]

New Jersey courts apply a pure Restatement (Second) analysis. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Simmons Estate*, 84 N.J. 28, 34–36, 417 A.2d 488, 491–93 (1980) (contract). Consequently, the analysis above, stripped of the governmental interest mentions, applies. In contract, the New Jersey court would apply its own law. *See McCabe v. Great Pac. Cen-*

*tury Corp.*, 222 N.J. Super. 397, 537 A.2d 303 (1988) (where contract performed in New Jersey, and one party domiciled there, New Jersey law applies). The New Jersey court would also apply either Pennsylvania or Florida law to the defamation action. Here, since both laws are foreign, there are no *lex fori* rules that could tip the balance.[17]

The result of this choice of law analysis is ambiguous. Each state would have to apply foreign law in at least one case. While it is more likely that New Jersey would apply its law to the contract action than that Pennsylvania would apply its law to the defamation action, the difference is not clearcut. This principle therefore leans toward the movants, but not decisively so.[18]

This lengthy exegesis and application of the *Gulf Oil* standards has an anticlimactic outcome. The private standards come out weakly for the movant. The public standards, however, are on balance stronger for the plaintiff, primarily because of the great difference in judicial efficiency. Since these factors essentially cancel each other out, the general presumption in favor of the plaintiff's choice of forum should not be disturbed. Therefore, the defendants' request that this action be dismissed because of *forum non conveniens* is denied.

## VII. *Transfer*

Finally, the defendants have asked that these actions be transferred to the United States District Court for the District of New Jersey in Camden should this court decide not to dismiss them. Transfer is governed by 28 U.S.C. §§ 1404(a) and 1406(a):

16. This court should again point out that, given the undeveloped facts here, this analysis is quite tentative. For these purposes, however, and at this stage in the proceedings, it should suffice.

17. But *quaere* whether a New Jersey court might not be more experienced with Pennsylvania law than with Florida law.

18. It has been argued that when a jurisdiction must adopt foreign law it largely obviates the need for *forum non conveniens*. Since most of the interests behind local adjudication stem

from the need to apply local standards, the only remaining terms in the analysis—convenience and the political interest in resolving a local dispute locally—will normally count for little. Barring an abuse of the litigation process by a plaintiff, then, the doctrine would be inapposite. Stewart, *Forum Non Conveniens: A Doctrine in Search of a Role*, 74 Calif.L.Rev. 1259, 1322–23 (1986). This court need not go that far, of course, but this analysis emphasizes the extraordinary nature and infrequent applicability of *forum non conveniens*.

§ 1404(a). For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. § 1406(a). The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. At the outset, it should be observed that § 1406(a) applies only where venue is improper, as established after a motion under Fed.R.Civ.P. 12(b)(3). Since this court has already determined that venue is proper, it is not necessary to proceed further under § 1406(a). *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962); *Pennwalt Corp. v. Horton Co.,* 582 F.Supp. 438, 441 (E.D.Pa.1984); *see also* P. Bator, D. Meltzer, P. Mishkin & D. Shapiro, *Hart & Wechsler's The Federal Courts and the Federal System* 1742 (3d ed. 1988); 1A J. Moore, *Moore's Federal Practice* ¶ 0.345[1], at 4321 (1989).

This leaves § 1404(a). The principle underlying it—that a court properly vested with jurisdiction may nevertheless, in the interests of justice and convenience, require that the parties go elsewhere for adjudication—resembles that for *forum non conveniens.* However, the milder result here makes § 1404(a) more liberally applied. Thus, in *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955), the Court observed that "Congress ... intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." *See also Solomon v. Continental Am. Life Ins. Co.,* 472 F.2d 1043, 1046 (3d Cir.1973); *Rowles v. Hammermill Paper Co.,* 689 F.Supp. 494, 495 (E.D.Pa.1988).

Under § 1404(a), this court must make a two-part inquiry. First, it must determine whether the alternative forum requested is a proper venue under 28 U.S.C. § 1391.

*Van Dusen v. Barrack,* 376 U.S. 612, 624, 84 S.Ct. 805, 813, 11 L.Ed.2d 945 (federal law applies); *Hoffman v. Blaski,* 363 U.S. 335, 344, 80 S.Ct. 1084, 1090, 4 L.Ed.2d 1254 (1960); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970); *Reading Metal Craft Co. v. Hopf Drive Assocs.,* 694 F.Supp. 98, 100 (E.D.Pa.1988). If so, the court must consider whether a transfer would further justice and convenience. In doing so, courts have followed *Norwood's* hint and employed essentially the same factors used in *forum non conveniens* determinations. The first consideration must necessarily be plaintiff's choice of forum, which " 'should not be lightly disturbed.' " *Shutte,* 431 F.2d at 25 (quoting *Ungrund v. Cunningham Bros., Inc.,* 300 F.Supp. 270, 272 (S.D.Ill.1969)); *Rowles,* 689 F.Supp. at 495; *Supco Automotive Parts, Inc. v. Triangle Auto Spring Co.,* 538 F.Supp. 1187, 1194 (E.D.Pa.1982). However, this obviously cannot be determinative, lest this doctrine be rendered nugatory. The others have been catalogued variously. They include:

1. Relative ease of access to sources of proof;

2. Availability of compulsory process for attendance of unwilling witnesses;

3. Cost of obtaining attendance of willing witnesses;

4. Possibility of viewing the premises, if appropriate;

5. Other practical considerations that make trial relatively easy, expeditious, and inexpensive;

6. Enforceability of a judgment if obtained;

7. Relative congestion of court dockets;

8. Relationship of the litigation to the community from which jurors will be drawn; and

9. Familiarity of the forum with the law governing a diversity action.

*See, e.g., Uniroyal Goodrich Tire Co. v. Munnis,* No. 89–2690, 1989 WL 89235 (E.D.Pa. July 31, 1989) (1989 U.S. Dist. LEXIS 9170); *Rowles,* 689 F.Supp. at 495; *Supco,* 538 F.Supp. at 1191. The moving party bears the burden of establishing the value of transfer. *Shutte,* 431 F.2d at 25.

Despite the relatively relaxed standard employed here, this proof must strongly favor transfer for the court to grant it. *Shutte,* 431 F.2d at 25; *Computers Plus, Inc. v. AGS Enters., Inc.,* No. 89–1406, 1989 WL 37112 (E.D.Pa. Apr. 12, 1989) (1989 U.S. Dist. LEXIS 3972).

The first prong of the test is satisfied. Under 28 U.S.C. § 1391(a), a court sitting in diversity is a proper venue for an action when, *inter alia,* all defendants reside there. Both parties acknowledge that Hereford and Murtaugh are New Jerseyites, and so venue would be proper there. The second prong, however, is not satisfied, and so this court will deny the transfer motion.

The first factor, plaintiff's choice of forum, is admittedly entitled to less weight here than usual. Just as in *forum non conveniens,* the importance of hometown law is attenuated when the plaintiff does not reside in the forum. *See, e.g., In re All Terrain Vehicles Litigation,* No. 88–237, slip op. at 6, 1989 WL 30948 (E.D.Pa. Feb. 23, 1989); *Rowles,* 689 F.Supp. at 496. Since some of the conduct complained of appears to have occurred in this forum, most notably in the defamation action, the importance of the forum choice should not be diminished further. *Cf. LaForge v. Consolidated Rail Corp.,* No. 87–6314, 1988 WL 38321 (E.D.Pa. Apr. 22, 1988) (1988 U.S. Dist. LEXIS 3587) (no conduct in forum); *Bartolacci v. Corporation of Presiding Bishop,* 476 F.Supp. 381 (E.D.Pa. 1979) (same).

Since the remaining factors largely track those discussed in the *forum non conveniens* section above, they need not be presented at any length here. Some differ, though, because the courts differ. One difference is simply location. The federal courthouse in Camden is roughly two miles from that in Philadelphia. Consequently, what ease or convenience is lost to the Cape May County residents by trial in Philadelphia is lost as well to them in Camden, barring an unexpected outbreak of gephyrophobia. Even the modest inconvenience that could result from trial in Allentown is greatly diminished. This factor is hence

still further weakened. The compulsory process factor is again neutral, though for a different reason; since both courts are governed by the same federal rules, they both have "bulge jurisdiction" in each others' territories. There is thus little difference here.

The only other factor for which the facts are different is court congestion, the first of the public interest factors. In the last year studied, the Eastern District of Pennsylvania took an average of six months to move a civil case from filing to disposition and an average of eleven months from issue to trial. However, the District of New Jersey took eight months to proceed from filing to disposition and twenty-eight from issue to trial. Administrative Office of the U.S. Courts, *Federal Court Management Statistics: 1988* 56–57 (1988). This difference is even greater than that in the New Jersey state courts. While it should go without saying that these facts do not reflect badly upon our grossly-understaffed sister court across the Delaware, the difference is considerable.

The changes in these factors move more in favor of this forum. While the presumption in favor of the plaintiff's choice is weaker here than in *forum non conveniens,* the quasi-*Gulf Oil* analysis shows at best only a very slight lean toward New Jersey, and more probably indicates some tilt toward Pennsylvania. Even were there no presumption that the plaintiff's choice should be honored, this court might well keep jurisdiction under § 1404(a); since there is, this court has little hesitation in denying the defendants' request for transfer.

VIII. *Conclusion*

In short, this court finds that it has subject matter jurisdiction over these disputes and personal jurisdiction over the parties. This court is a proper venue for these actions. The movants have not demonstrated that any unnamed parties are indispensable to this action. This court need not abstain under *Colorado River* or, indeed, under any of the flavors of abstention. Neither *forum non conveniens* nor

transfer to Camden would be appropriate here. Accordingly, Defendants' Motion to Dismiss or Transfer is denied.